UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| ROSELLE RAMIN R.,[1]<br>Plaintiff,<br><br>v.<br><br>FRANK BISIGNANO,<br>Commissioner of Social Security,<br><br>Defendant. | Case No. 2:25-cv-11731-JDE<br><br>MEMORANDUM OPINION AND ORDER |

Roselle Ramin R. ("Plaintiff") filed a Complaint in this Court seeking review of the Commissioner's denial of her application for disability insurance benefits ("DIB") and supplemental security income ("SSI"). Dkt. 1. Defendant filed an Answer (Dkt. 11) and lodged the Administrative Record (Dkt. 11-1 to 11-28, "AR") on February 17, 2026. Plaintiff filed an Opening Brief on April 17, 2026. Dkt. 14. Defendant filed a Responding Brief on May 18, 2026. Dkt. 16. Plaintiff did not file an optional reply. The matter is now ready for decision.

[1] Plaintiff's name has been partially redacted in accordance with Fed. R. Civ. P. 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

## I.

## BACKGROUND

Plaintiff filed applications for DIB and SSI on November 19, 2015, alleging disability starting on March 2, 2015. AR 236-51. After the applications were denied initially (AR 149-54), an administrative hearing was held on March 20, 2018. AR 80-114. Plaintiff, represented by counsel, testified before an Administrative Law Judge ("ALJ"), as did a vocational expert ("VE"). Id. On July 10, 2018, the ALJ issued a written decision finding Plaintiff was not disabled. AR 26-53.

After Plaintiff sought review of that final decision in the district court, on February 1, 2021, Magistrate Judge Victor E. Bianchini reversed and remanded the matter for further proceedings. Roselle Ramin R. v. Andrew M. Saul, Case No. 2:19-cv-06562-VEB (C.D. Cal. Feb. 1, 2021); AR 1368-90. On April 14, 2021, the Appeals Council vacated the Commissioner's prior decision, consolidated the case with a duplicate claim for DIB subsequently filed by Plaintiff alleging a disability as of April 1, 2020, and remanded for further proceedings consistent with Judge Bianchini's order. AR 1391-96. On remand, a different ALJ held a hearing on May 3, 2022, during which Plaintiff, represented by counsel, a medical expert, and a VE testified. AR 1257-1313. On June 15, 2022, the second ALJ issued a partially favorable decision, finding that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in national economy that she could have performed prior to April 1, 2020, but beginning April 1, 2020, there were no such jobs. AR 1242-44. Thus, the second ALJ found Plaintiff "was not disabled prior to April 1, 2020[,] but became disabled on that date and has continued to be disabled through the date." AR 1244.

After the second decision became final, Plaintiff again sought review in this Court and this Court again entered judgment reversing and remanding the

unfavorable portion of the ALJ's decision for further proceedings. Roselle Ramin R v. Kijakazi, 5:22-cv-01673-JDE; AR 3813-31. The Appeals Council then remanded the case for further administrative proceedings consistent with the second remand order. AR 3832-3836.

On remand, a third ALJ held a hearing on August 19, 2025. AR 3997-4014, 3761-77. The third ALJ issued a written decision in September 2025, finding Plaintiff met the special earnings requirements for a period of disability and disability insurance benefits through December 31, 2021, and had not engaged in substantial gainful activity from March 2, 2015 through the date last insured. AR 3733-34. The third ALJ further found that Plaintiff suffered from severe impairments of: diabetes type II with neuropathy; carpal tunnel syndrome; heart disease; right shoulder tendinitis; hypertension; degenerative disk disease of the cervical spine; migraine headaches; obesity; major depressive disorder; and generalized anxiety disorder, but did not suffer from an impairment that met or equaled a listed impairment under 20 C.F.R., Part 404, Subpart P, Appendix 1. AR 3734-35. For the period prior to April 1, 2020, the third ALJ assessed Plaintiff as retaining the residual functional capacity ("RFC") to perform the demands of light work, as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with the following additional limitations:

> Lifting, carrying, pushing and pulling is limited to 20 pounds occasionally, and 10 pounds frequently; can sit for 6 hours in an 8-hour workday; can stand and/or walk for 4 hours in an 8-hour workday; can occasionally reach overhead with the bilateral upper extremities; can frequently handle, finger and feel bilaterally; can frequently climb ramps and stairs; cannot climb ladders; ropes and scaffolds; can frequently balance, stoop, kneel, crouch, or crawl; cannot work at unprotected heights or moving mechanical parts; needs to wear a brace on the dominant right hand while working;

> can occasionally push and pull with the bilateral upper extremities; can frequently be exposed to dust, fumes, odors, and pulmonary irritants; can understand, remember, and carry out simple instructions; can perform work that does not require a specific production rate pace, such as an assembly line or an hourly production quota; can make simple work-related decisions; can deal with occasional changes in a routine work setting; can occasionally interact with coworkers; cannot interact with the general public; can accept non-confrontational supervision and constructive criticism from supervisors; can frequently relate appropriately with cooperative, non-threatening coworkers; is able to ask relevant questions and request assistance when necessary; and can demonstrate adequate hygiene.

AR 3736.

The third ALJ found Plaintiff had no past relevant work and, based on her age, education, work experience, and RFC could perform the following work: routing clerk (Dictionary of Occupational Titles ("DOT") 222.687-022) with 97,200 jobs available in the national economy; and mail clerk (DOT 209.687-026) with 13,500 jobs available in the national economy. AR 3742-43 As a result, the third ALJ concluded Plaintiff did not suffer from a disability during the relevant time. AR 3745. That decision became the final decision of the Commissioner on November 22, 2025. AR 3729. This action followed.

## II.
## LEGAL STANDARDS

### A. <u>Standard of Review</u>

Under 42 U.S.C. § 405(g), this Court may review a decision to deny benefits. The ALJ's findings and decision should be upheld if they are free from legal error and supported by substantial evidence based on the record as a

whole. Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (as amended); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such relevant evidence as a reasonable person might accept as adequate to support a conclusion. Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla, but less than a preponderance. Id.

To assess whether substantial evidence supports a finding, the court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). "If the evidence can reasonably support either affirming or reversing[,]" the reviewing court "may not substitute its judgment" for that of the Commissioner. Id. at 720-21; see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("Even when the evidence is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."), superseded by regulation on other grounds as stated in Smith v. Kijakazi, 14 F.4th 1108, 1111 (9th Cir. 2021).

Even if an ALJ errs, the decision will be affirmed if the error is harmless (Molina, 674 F.3d at 1115), that is, if it is "inconsequential to the ultimate nondisability determination[,]" or if "the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." Brown-Hunter, 806 F.3d at 492 (citation omitted); Smith, 14 F.4th at 1111 (even where the "modest burden" of the substantial evidence standard is not met, "we will not reverse an ALJ's decision where the error was harmless").

## B. The Five-Step Sequential Evaluation

When a claim reaches an ALJ, the ALJ conducts a five-step sequential evaluation to determine at each step if the claimant is disabled. See Ford v. Saul, 950 F.3d 1141, 1148-49 (9th Cir. 2020); Molina, 674 F.3d at 1110. First, the ALJ considers if the claimant works at a job that meets the criteria for

"substantial gainful activity." Molina, 674 F.3d at 1110. If not, the ALJ proceeds to a second step to determine if the claimant has a severe medically determinable impairment or combination of impairments that has lasted for more than twelve months. Id. If so, the ALJ proceeds to a third step to assess whether the impairments render the claimant disabled because they meet or equal any of the listed impairments in the Social Security Regulations at 20 C.F.R. Part 404, Subpart P, Appendix 1. See Rounds v. Comm'r Soc. Sec. Admin., 807 F.3d 996, 1001 (9th Cir. 2015). If the impairments do not meet or equal a listing, before proceeding to the fourth step, the ALJ assesses the claimant's RFC, that is, what the claimant can do on a sustained basis despite the limitations from the impairments. See §§ 404.1520(a)(4), 416.920(a)(4); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996). After assessing the RFC, the ALJ proceeds to the fourth step to determine if, in light of the RFC, the claimant can perform past relevant work as actually or generally performed. See Stacy v. Colvin, 825 F.3d 563, 569 (9th Cir. 2016). If the claimant cannot perform past relevant work, the ALJ proceeds to a fifth and final step to determine whether there is any other work, in light of the claimant's RFC, age, education, and work experience, that the claimant can perform and that exists in "significant numbers" in either the national or regional economies. See Tackett v. Apfel, 180 F.3d 1094, 1100-01 (9th Cir. 1999); 20 C.F.R. §§ 404.1566(a), 416.966(a). A claimant who can do other work is not disabled; a claimant who cannot and who meets the duration requirement is disabled. See Tackett, 180 F.3d at 1099; see also Woods v. Kijakazi, 32 F.4th 785, 788 n.1 (9th Cir. 2022) (summarizing the steps and noting that "[t]he recent [2017] changes to the Social Security regulations did not affect the familiar 'five-step sequential evaluation process.'").

The claimant generally bears the burden at steps one through four to either show disability or entitlement to proceed to the next step and bears the

ultimate burden to show disability. See, e.g., Ford, 950 F.3d at 1148; Molina, 674 F.3d at 1110; Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995). However, at step five, the ALJ has a limited burden of production to identify representative jobs that the claimant can perform and that exist in “significant” numbers in the economy. See Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); Tackett, 180 F.3d at 1100.

## III.

## DISCUSSION

Plaintiff presents two issues: (1) did the third ALJ properly apply Plaintiff’s RFC in the hypotheticals posed to the 2025 VE; and (2) is the RFC’s coworker interaction limitations consistent and supported by substantial evidence. Dkt. 14 at 5-10; Dkt. 16 at 2-3. Because the Court remands the case on the first issue, the Court does not address the second issue.

### A. Applicable Law

If a claimant is found to be unable to perform his or her past relevant work, at step five, the Commissioner bears the burden of “show[ing] that the claimant can perform some other work that exists in ‘significant numbers’ in the national economy, taking into consideration the claimant’s residual functional capacity, age, education, and work experience.” Tackett, 180 F.3d at 1100 (citation omitted). The Commissioner can meet this burden with the testimony of a VE. Id. at 1101 (emphasis omitted). “Hypothetical questions asked of the vocational expert must ‘set out all the claimant’s impairments.’” Lewis v. Apfel, 236 F.3d 503, 517 (9th Cir. 2001) (citation omitted). “If the record does not support the assumptions in the hypothetical, the vocational expert’s opinion has no evidentiary value.” Id.

### B. Relevant Testimony

On April 1, 2016, Dr. Bahareh Talei, a clinical psychologist, performed a complete consultative psychological evaluation regarding Plaintiff’s mental

impairments. AR 428-32. Dr. Talei diagnosed Plaintiff with major depressive disorder, moderate, recurrent and borderline intellectual functioning, and assigned Plaintiff a Global Assessment of Functioning ("GAF") score of 58. AR 431. Most significant, Dr. Talei noted, Plaintiff was "socially inappropriate with this examiner," and opined that "[d]ue to her symptoms, she presents with a moderate inability to interact appropriately with supervisors, coworkers[,] and peers on a consistent basis." AR 432. Dr. Talei also noted, inter alia, that Plaintiff was "highly emotional," "tearful," "[p]sychomotor slowing [was] evident," "intellectual functioning [was] in the borderline range," her mood was dysthymic with "a flat and tearful effect," and her attention and concentration span were mildly diminished. AR 430-31.

Dr. Alan Harris, a State agency physician, conducted a mental RFC assessment on April 23, 2016, and accorded "great weight" to the opinion of Dr. Talei as consistent with exam results and Plaintiff's history and activities of daily living. AR 121, 125-27. As relevant here, Dr. Harris opined that Plaintiff has social interaction limitations and was moderately limited in her ability to interact appropriately with the general public and to accept instructions and respond appropriately to criticism from supervisors. AR 126. Dr. Harris explained that Plaintiff "[l]ikely would not work effectively with the public [and] have some difficulty with supervisors." Id. Dr. Harris further explained: "[Plaintiff] could accept non-confrontational supervision and constructive criticism from supervisors . . . ." AR 127.

In the 2018 decision denying Plaintiff's applications, the first ALJ assigned "partial weight" to the opinions of Drs. Harris and Talei. AR 1347-48. To the extent the first ALJ departed from their findings, that ALJ claimed to have adopted "greater social functioning limitations," including "no interactions with the general public," "only occasional interactions with co-workers," and "frequent interactions with supervisor[s]." AR 1348.

As noted, Plaintiff thereafter filed her first complaint in this Court, requesting review of the first ALJ's finding of non-disability. Plaintiff's main argument was that the first ALJ did not accurately assess her ability to interact with supervisors. In that first proceeding in this Court, Judge Bianchini observed that the first ALJ "found that Plaintiff was limited to frequent interaction with a supervisor[] but did not assess any limitation regarding the nature of the interaction," which was "an important omission." AR 1383. As Judge Bianchini explained, the "RFC determination implie[d] an ability to cope with, and respond appropriately to, assertive, firm, even 'impatient,' supervision in the workplace, albeit on no more than a frequent basis," which was "at odds" with Dr. Harris's assessment that Plaintiff could accept "non-confrontational supervision and constructive criticism from supervisors" and at least arguably inconsistent with Dr. Talei's opinion. AR 1383-84.

Judge Bianchini remanded the matter because "[t]he issue of whether a limitation to frequent interaction with supervisors adequately accounts for the recognized moderate impairment in Plaintiff's ability to accept supervision remains unresolved" and it was not clear from the record that "Plaintiff is disabled, as neither [the first ALJ] nor counsel asked the vocational expert whether a claimant limited to, for example, accepting supervision delivered in a non-confrontational and constructive manner, could perform work that exists in significant numbers in the national economy." AR 1385-86.

At the 2022 hearing, the second ALJ asked the VE (the "2022 VE") if jobs existed for a claimant "limited to only nonconfrontational supervision and only receiving constructive criticism from supervisors." AR 3903. The 2022 VE answered "[n]o," clarifying, "there would be some subjective determination [of] how the worker was seeing constructive criticism" and "there would be [no] real positions [in which] the supervisor would not have to provide some feedback that could be interpreted as non-constructive by the worker . . . ." AR

3904. As noted, the second ALJ issued a partially favorable decision. After Plaintiff sought review, this Court remanded the unfavorable portion of the second ALJ's decision for further proceedings.

During the subsequent 2025 hearing, the third ALJ asked Plaintiff's Representative about the 2022 hypothetical, expressing concern regarding the terms "nonconfrontational supervision and constructive feedback":

> ALJ: Because it would seem that under labor laws . . . that supervision has to be nonconfrontational and any criticism would have to be constructed, wouldn't it? I mean, . . . isn't that what would be expected from supervisors to do? . . . I'm just confused by that . . . .
>
> [Plaintiff's Representative]: I think the opposite of that would be if, if criticism is perceived, whether it's the tone of it or if it's constructive or not. It . . . is subjective in the eyes of the employee, and if the record shows that this employee or potential individual has poor coping skills, she may perceive anything as . . . nonconstructive . . . perhaps we can ask the [VE].
>
> ALJ: We . . . try to make this at least subjective as possible . . . . I'm just trying to come to some idea of how we can pose that question. But . . . that's ok, . . . we'll get to that then.

AR 3767-68.

The third ALJ later asked a new VE (the "2025 VE") whether there would be work available nationwide for an individual that could "accept nonconfrontational supervision and constructive criticism from supervisors." AR 3774. The 2025 VE responded in the affirmative. Id. The third ALJ then asked the 2025 VE a series of questions to understand the hypothetical:

> ALJ: Okay. Are those terms that you can work with as far as nonconfrontational and constructive criticism?

VE: [Y]es, I know what they mean . . .

ALJ: Is that addressed in the DOT?

VE: No, it's not . . . [in my] opinion constructive criticism is . . . providing feedback that's helpful . . . it focuses on . . . behavior in the task. . . . [I]f the [claimant] were able to tolerate that, then yes, that would not be an issue . . . .

ALJ: So let's then change this hypothetical, as hypothetical four. . . . [T]he claimant is . . . not able to deal with more than occasional critique of her job performance. . . . [I]s there other work available for that person?

VE: No. In my opinion, I would say that's work preclusive . . . [The claimant] would need to be able to . . . take a critique from a supervisor . . . as much as necessary.

AR 3774-75. The third ALJ later asked Plaintiff's Representative if "being unable to more than occasional[y] accept critique and corrections from [a] supervisor would be equivalent to nonconfrontational and constructive criticism." AR 3776. Plaintiff's Representative answered, "Yeah, I think that . . . phrases it adequate[ly]. . . ." Id.

The third ALJ ultimately found that Plaintiff was not disabled, rejecting the 2022 VE's testimony that there would be no jobs for a claimant that could accept only nonconfrontational supervision and constructive feedback. AR 3744. The third ALJ reasoned that the 2022 VE's testimony was a "significant change to the hypothetical limitations posed" because it addressed a subjective standard of supervision and feedback, rather than an objective standard. Id.

**A. Analysis**

As an initial matter, the Court notes that the ALJs below and the parties herein are struggling with difficulties not necessarily of their own making.

Plaintiff's RFC limited Plaintiff to receive only non-confrontational supervision and constructive feedback (the "supervisor limitation"). As discussed above, the supervisor limitation originated from State agency physician Dr. Harris's report. Plaintiff does not challenge this RFC finding but instead argues that the third ALJ's decision made assumptions applying the supervisor limitation in step five that were not supported by Plaintiff's medical record, that is, determining that the supervisor limitation applied an objective standard without tracing their decision to the medical record. Dkt. 14 at 5-10.

The Court agrees with Plaintiff and finds that the medical record does not support the third ALJ's objective interpretation of the supervisor limitation. In the first order of remand from this Court, Magistrate Judge Bianchini framed a step-five hypothetical around a claimant who could "accept[] supervision delivered in a non-confrontational and constructive manner." AR 1385-86. The second ALJ followed this directive verbatim. AR 3903-04. However, 2022 VE interpreted the terms nonconfrontational and constructive as subjective—the limitation turning on how Plaintiff perceived supervision and feedback. Id. If Plaintiff cannot appropriately respond to feedback because she feels it is confrontational or unhelpful, then she will not be able to hold any job. Id.

The third ALJ sought clarification from Plaintiff's Representative on how the supervisor limitation should be applied, and Plaintiff's Representative argued for a subjective interpretation at Plaintiff's hearing. AR 3767-68. It is unclear whether the 2025 VE applied a subjective or objective standard on the limitation. The 2025 VE explained that the supervisor limitation required "friendly" supervision and "task-oriented" feedback (AR 3776-75), but this explanation does not address whether the 2025 VE applied a subjective or objective standard to the supervisor limitation. While the third ALJ attempted

to "rephrase the limitation," the rephrasing asked about quantity of supervision, not quality. AR 3775.

Accordingly, as presented below, the supervisor limitation has two possible applications: subjective and objective. Under the subjective interpretation, Plaintiff can handle some feedback and supervision—based on Plaintiff's perspective of what is nonconfrontational and constructive. Under the objective interpretation, Plaintiff can recognize and accept an objectively defined standard of nonconfrontational supervision and constructive feedback. The Court is unable to determine from the medical record presented whether the supervisor limitation is subjective or objective.

In his decision, the third ALJ applied the objective interpretation of the limitation, stating the 2022 VE's subjective interpretation did not respond to the 2022 hypothetical because the hypothetical imposed objective criteria from the RFC. AR 3744. However, the third ALJ did not explain how the objective standard is supported by Plaintiff's medical record.

In briefing, Defendant does not explain the basis for the third ALJ's reasoning; rather, Defendant argues that the third ALJ "implicitly" found the criteria from the medical record. Dkt. 16 at 5. However, an ALJ's RFC determination must include only limitations supported by the record. <u>Kitchen v. Kijakazi</u>, 82 F.4th 732, 742 (9th Cir. 2023). The ALJ did not cite to evidence in the medical record to support a finding that Plaintiff can identify and respond appropriately to supervision and feedback that is objectively friendly and nonconfrontational. <u>Id.</u> Due in part to the testimony of the 2022 VE, the error here is not harmless.

## B. <u>Remand Is Appropriate</u>

The Court has discretion to remand the matter for further proceedings. <u>Harman v. Apfel</u>, 211 F.3d 1172, 1175-78 (9th Cir. 2000) (as amended). When further proceedings would serve no useful purpose or when the record has been

fully developed, a court may direct an immediate award of benefits. See Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004); Harman, 211 F.3d at 1179 (noting "the decision of whether to remand for further proceedings turns upon the likely utility of such proceedings"). Remand for further proceedings is appropriate where issues must be resolved before a determination of disability can be made and it is not clear from the record that the claimant is disabled. See Bunnell v. Barnhart, 336 F.3d 1112, 1115-16 (9th Cir. 2003).

Here, further proceedings are appropriate. On remand, the ALJ may reassess Plaintiff's limitations in interacting with supervisors and coworkers based on the medical record and without restrictions previously imposed by this Court, conduct whatever further administrative proceedings are warranted, and proceed through the remaining steps of the disability analysis to determine whether Plaintiff is disabled.

## IV.
## ORDER

Pursuant to sentence four of 42 U.S.C. § 405(g), IT THEREFORE IS ORDERED that Judgment be entered reversing the decision of the Commissioner of Social Security and remanding this matter for further administrative proceedings consistent with this Order.

DATED: November 23, 2026

JOHN D. EARLY
United States Magistrate Judge